UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION

| | |
|---|---|
| ALISON APPLEBY | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No. _____<br>) |
| UNIVERSITY OF PIKEVILLE, INC. | )<br>) |
| Defendant. | )<br>)<br>) |
| Serve:  Registered Agent<br>         Burton J. Webb<br>         147 Sycamore Street<br>         Pikeville, Kentucky 41501<br>         (*via certified mail*) | )<br>)<br>)<br>)<br>)<br>)<br>) |
| _____ | ) |

# **COMPLAINT**

Comes now the Plaintiff, Alison Appleby, by and through counsel, and for her Complaint against the Defendant, states as follows:

## **I. PARTIES, VENUE, AND JURISDICTION**

1. That at all relevant times herein Plaintiff, Alison Appleby, (hereinafter "Appleby" and/or "Plaintiff") was a citizen and resident of Crystal Beach, Galveston County, Texas.

2. That at all relevant times herein, Defendant University of Pikeville (Hereinafter, "UPIKE" and/or "Defendant") was and is a private not-for-profit corporation with its principal place of business located at 147 Sycamore Street, Pikeville, Pike County,

Kentucky 41501.

3. Federal cause of action: This action is brought pursuant to Section 504 of the Rehabilitation Act, (hereinafter "RA"), 29 U.S.C. § 794, which confers jurisdiction on this Court for claims of RA discrimination. This Court also has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which confers general subject matter jurisdiction on this Court for all civil claims arising under the laws of the United States, such as the RA.

4. State causes of action: The Plaintiff is not asserting any claims in this action under the Kentucky Revised Statutes or the common law of Kentucky.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) as all of the events alleged herein occurred in this District. Further, the Defendant UPIKE has its principal business office in this District and thus, resides here pursuant to 28 U.S.C. § 1391 (c)(2); venue is therefore proper under 28 U.S.C. § 1391(b)(1).

## II. **STATEMENT OF FACTS**

6. UPIKE is a private university located in Pikeville, Kentucky, with an enrollment of approximately 2,300 students, including 1110 undergraduates.[1] UPIKE receives federal funding from the U.S. Government.[2] UPIKE has more than 100

---

[1] *See* https://www.upike.edu/?s=total+enrollment

[2] *See* https://www.upike.edu/?s=total+enrollment ("This program is supported by the Health Resources and Services Administration (HRSA) of the U.S. Department of Health and Human Services (HHS) as part of an award totaling $1,118,580.00 with no percentage financed with non-governmental sources."); *see also* https://www.upike.edu/undergraduate/financial-aid/consumer-information/ ("The University of Pikeville received $783,266 in Higher Education Emergency Relief Fund – Emergency Financial Aid Grants to Students from the Department of Education."); *and* https://www.upike.edu/upike-receives-competitive-4-4-million-grant-from-u-s-department-of-commerce/ ("The U.S. Department of Commerce announced a $4.4 million competitive grant awarded to the University of Pikeville (UPIKE) by the Department's Economic Development Administration (EDA). The

2

employees.

7. UPIKE has published a "Student Disability Accommodation Policy and Procedure" policy specifically offering reasonable accommodations to disabled students pursuant to the ADA and RA."[3]

8. The Plaintiff lived in Sherman, Texas while she attended high school. She graduated on June 23, 2023. At the age of 16, she was diagnosed with epilepsy. Epilepsy is a disease affecting the neurological and musculoskeletal systems of the body, as well as the speech organs. The Plaintiff's symptoms of epilepsy include frequent[4] "absence seizures"[5] where for brief periods of time, she becomes completely disoriented and confused. During these episodes, the Plaintiff cannot speak or comprehend words that others are saying to her. During these episodes she also loses voluntary control of her muscles. Following most seizures, she has no memory of the event and cannot describe what happened afterwards. For a period of hours or even up to a day after each seizure, the Plaintiff often suffers partial paralysis of the arms and legs, such that she cannot move her limbs in a normal fashion.

9. As a result of her epilepsy, the Plaintiff cannot live by herself. She is at great risk

---

university plans to utilize the grant to support the construction of the new UPIKE AgTech Innovation Center of Excellence.")

[3] *See* https://www.upike.edu/wp-content/uploads/2021/11/Policy-for-Student-Disability-Accommodations.pdf

[4] The Plaintiff normally suffers about five seizures a day without medication; but only about three a month when taking her prescribed medication. Her anti-seizure medications are Lamotrigine and Oxtellar.

[5] *See* https://www.mayoclinic.org/diseases-conditions/petit-mal-seizure/symptoms-causes/syc-20359683

of injury and harm should she suffer a seizure while alone. However, the Plaintiff can live with a trained service dog. In 2021, the Plaintiff's parents acquired a golden retriever for her named "Brady". Brady is a trained service dog who can, through subtle and minute changes in the Plaintiff's physiology, detect a seizure before it begins, and alert the Plaintiff through barking. Therefore, as long as Brady is with her at all times, Plaintiff can lead a normal life with confidence that she may take adequate preventative measures to safeguard her body from injury prior to the onset of a seizure. Thus, during the Plaintiff's senior year of high school (2022/2023), she and her parents began planning for Brady to accompany her to college. As long as Brady can live with her and attend classes with her, the Plaintiff is able to lead the life of a normal college student: attending classes, studying for exams, participating in extracurricular activities, and attending social events along with all of her peers.

10. The Plaintiff is a competitive archer with hopes perhaps of even competing in the Olympics someday. As long as Brady is with her, Plaintiff is capable of participating and competing in archery tournaments at the highest level.

11. UPIKE has one of the premier college-level archery teams in the country. On or about February 4, 2021, while the Plaintiff was a sophomore in high school, she began being recruited by Johnathon Clemins, the assistant coach of the UPIKE archery team. Clemins explained that UPIKE had one of the best college archery teams in the United States, and that the Plaintiff should consider applying there upon high school graduation. Clemins kept in contact with Plaintiff throughout the remainder of 2021 and repeatedly urged her to consider attending college at

UPIKE.

12. On or about November 4, 2021, (the fall of the Plaintiff's junior year of high school), the Plaintiff spoke with Clemins on the telephone. The Plaintiff expressed that she was very interested in attending UPIKE and participating in the archery team there. She informed Clemins of her epilepsy and of her need to be with Brady at all times, even during archery practice and competitions. Clemins assured her that this would not be a problem and stated that Brady would be welcome on campus and at all archery events. Clemins kept in touch with the Plaintiff throughout the spring and summer of 2022, repeatedly encouraging her to apply to UPIKE and join the archery team there.

13. On or about November 17, 2022, (during the fall of the Plaintiff's senior year of high school), the Plaintiff formally applied to UPIKE. On December 9, 2022, the Plaintiff was formally accepted to UPIKE for admission in the undergraduate freshman class beginning in the fall semester 2023. Plaintiff immediately informed Clemins that she had been accepted and wished to join the archery team. He invited her to come take a tour of the campus and of the archery facilities there.

14. On or about February 26, 2023, the Plaintiff and her mother (Beth Appleby) and Brady flew from Texas to Kentucky to visit the campus of UPIKE. On February 27, 2023, the trio (the Plaintiff, her mom, and the dog) toured the UPIKE campus and visited the archery range. They had lunch with Clemins and Ellie Jackson, the head archery coach. During this lunch, they discussed Brady. Plaintiff explicitly asked if she would be allowed to bring Brady with her to archery events, and both Clemins and Jackson assured her that this would be fine.

15. Also during this visit, (February 27, 2023), the Plaintiff (and her mother and Brady) met with Lee Upchurch, the Director of Public Safety to explain about Brady, as well as with Misty Dawn Asbury, the Director of the UPIKE Disability Resource Center. The Plaintiff told Ms. Asbury about her epilepsy and explained her medical need to be with Brady at all times on campus. The Plaintiff gave Asbury notes from her physicians explaining her medical condition. The Plaintiff formally asked Asbury for a reasonable accommodation to allow her to live with Brady in the dorms and to bring him with her to classes and archery events. Asbury stated that it would not be a problem for UPIKE to accommodate this request.

16. On February 28, 2023, Upchurch emailed the Plaintiff to welcome her to UPIKE and commend Brady for his good behavior during her visit to campus.

17. On March 2, 2023, the Plaintiff officially committed to joining the archery team.

18. On April 26, 2023, Asbury sent the Plaintiff an email acknowledging her request for a disability accommodation and approving her to live with a service dog in the dorms.

19. On May 11, 2023 and June 10, 2023, the Plaintiff participated in archery tournaments with Brady at her side. Clemins observed her performance during these tournaments and observed that Brady was with her without any problems.

20. On June 16, 2023, the Plaintiff and her mother again toured the UPIKE campus with Brady and met some of her professors. During this visit, the Plaintiff met her chemistry professor, Dr. Tom Hess, who told her it was fine for her to bring Brady to her chemistry labs. Also during this visit, Upchurch told the Plaintiff that he and his staff were taking epilepsy awareness training in anticipation of her arrival on

campus in the fall.

21. On August 12, 2023, the Plaintiff and Brady moved into her dorm room on campus located in Derriana Hall. The Plaintiff was assigned a roommate, Anna Howard. Plaintiff and Howard immediately noticed a mildew smell and black mold growing on the window. The Plaintiff and Howard and their mothers attempted to remedy this with Lysol and DampRid, an over-the-counter humidity absorbing product.

22. On August 13, 2023, Brady became noticeably ill and began uncontrollably and repeatedly vomiting. August 13th was a Sunday and there were no veterinarians open in Pikeville. Plaintiff therefore drove to the Tri-State Animal Emergency Room in Kenova-Ceredo, West Virginia, (Dr. Anna Scarberry) for emergency care for Brady. Dr. Scarberry prescribed some medication for Brady to stop the vomiting and advised the Plaintiff to follow up with her local vet.

23. On August 14, 2023, Plaintiff scheduled a follow-up appointment with the Valley Veterinary Clinic in Pikeville. (Dr. Whitney Rauth). Dr. Rauth opined that Brady was suffering the effects of breathing in or otherwise ingesting mold. Dr. Rauth told the Plaintiff that UPIKE had had problems with mold infestation in their dorms. Dr. Rauth advised the Plaintiff that it was essential for Brady's health that she move to new housing as soon as possible to get him away from the mold exposure. Dr. Rauth offered to speak with Dr. Mathys Meyer (Assistant Provost of UPIKE) about switching the Plaintiff to a new dorm room.

24. On August 14, 2023, as a result of dealing with the stress of Brady's illness, and Brady being so ill that he was unable to notice the signs of an imminent seizure, the Plaintiff suffered eight (8) seizures between 2:00 pm and 6:00 p.m.

25. On August 18, 2023, the Plaintiff attended an in-person meeting with Meyer, Upchurch, Clemins, Jackson, and Stephanie Stiltner (Director of Family & New Student Connections). Plaintiff's mother and father (Tim Appleby) participated by telephone. The Plaintiff explained the facts outlined in paragraphs #21-24 above. Plaintiff requested to be moved to a new dorm room where Brady would not be exposed to mold. Meyer advised the Plaintiff that they would order a rushed test for mold and granted her request to be moved to a new dorm room. Meyer indicated the results of the test would be available by Friday morning at the latest, but never contacted the Plaintiff or her parents with the findings.

26. On August 17, 2023, Plaintiff moved into a new dorm room located in Condit Hall. However, this room also smelled musty and had visible signs of mold. The Plaintiff advised Meyer that this room was equally moldy and equally detrimental to Brady's health. Meyer advised her to go to student housing for further assistance.

27. On August 18, 2023, Plaintiff went to the student housing office and met with an employee there (name unknown—the person was a white female). The employee told the Plaintiff if she was not happy with her new dorm, she would need to withdraw from school. The Plaintiff immediately then went to the admissions office where she met with an employee (name unknown—older white male). This employee told her that if she did not withdraw from school by Monday, August 21, 2023, she would be charged full tuition regardless if she stayed in school or not. Plaintiff therefore filled out a withdrawal form.

28. On August 19, 2023, Plaintiff's mother arrived on campus to assist her daughter.

On August 21, 2023, the Plaintiff and her mother met in person on campus with Meyer and Stiltner. Plaintiff and her mother advised Meyer and Stiltner that she did not wish to withdraw from school. Rather, she just wanted to be moved to a new dorm room with no mold infestation. Meyer told the Plaintiff that she was too disabled to stay on campus and they could not make accommodations for her and Brady. Meyer told the Plaintiff he would zero out her tuition balance. Meyer told the Plaintiff that he did not need to make any arrangements for her to stay at UPIKE because they are just a "small farm school" without the financial resources to remediate the mold problem. Meyer told Plaintiff that because she is disabled, she cannot just go to any school; she needed to pick a new college to go to that was large enough to accommodate someone with her type of disability. Meyer stated that when she first came on campus, he did not realize that Brady was a "real service dog". Meyer told the Plaintiff that he was sorry, but she and Brady could not remain enrolled at UPIKE. Meyer then concluded the meeting.

29. On August 22, 2023, the Plaintiff and her mother and Brady returned to their home in Texas. As a result of being disenrolled from UPIKE, the Plaintiff missed the fall 2023 semester of college.

### III.  PLAINTIFF'S SUPPORTING DOCUMENTATION

The Plaintiff is in possession of the following documentation which corroborates and supports the factual allegations set forth in paragraphs #1-29 above. The Plaintiff hereby submits these items as attachments to the Complaint in support of her allegations against the Defendant.

30. Email of Acceptance to UPIKE 12-9-22   (*EXHIBIT #1*)

31. Service Dog Accommodations Email 4-26-23 (*EXHIBIT #2*)

## IV. CAUSE OF ACTION

### COUNT I – DISABILITY DISCRIMINATION
### IN VIOLATION OF THE REHABILITATION ACT
### Section 504, 29 U.S.C. § 794

32. The Plaintiff fully and completely restates and reincorporates the averments contained in paragraphs #1- #31 above as if fully set forth herein.

33. As a result of her epilepsy, Appleby suffers a substantial impairment of several major life activities. During her seizure episodes, she cannot speak, walk, control her muscles, or comprehend words that are spoken to her. After the episodes she suffers partial paralysis of the limbs which impedes her ability to walk and use her hands. The Plaintiff's epileptic seizures affect her neurological system, musculoskeletal system, and speech organs. Appleby remains at a heightened and ongoing risk of suffering future epileptic seizures for the rest of her life.

34. Appleby was perceived and regarded by Meyer, Asbury, Clemins, Jackson, Stiltner, and Upchurch as having a continuing and ongoing impairment that substantially limited one or more major life activities. Evidence of this perception can be found in the email from Asbury found in the attached Exhibit #2, as well as in the comments of Meyer on August 21, 2023, as described in paragraph #28 above, including, but not limited to:

    a. Meyer told the Plaintiff that she was too disabled to stay on campus and they could not make accommodations for her and Brady.

    b. Meyer told Plaintiff that because she is disabled, she cannot just go to any school; she needed to pick a new college to go to that was large enough to accommodate someone with her type of disability.

    c. Meyer stated that when she first came on campus, he did not realize that Brady was a "real service dog".

35. Appleby was fully qualified to be an undergraduate at UPIKE. She met all admissions requirements and was accepted into the 2023/24 freshman class. (See Exhibit #1). Appleby was able to attend classes and complete all requirements of her undergraduate studies with or without any accommodation. As long as Appleby takes her anti-seizure medication and has her service dog with her to alert her in advance of oncoming seizures, she can lead a normal life. The reasonable accommodation the Plaintiff requested (and was ultimately denied) was a mold-free dorm to live in that would not be detrimental to the health of her service dog, Brady. Plaintiff's request for an accommodation did not have anything to do with her ability to successfully complete all academic requirements of a UPIKE freshman.

36. UPIKE is an entity that receives federal funds. (*See footnote #2 above*)

37. Appleby was disenrolled and terminated from UPIKE on August 21, 2023, solely because of the disability described in paragraph #33 above and/or the perceived disability described in paragraph #33 above. Evidence of

the motivation and purpose behind UPIKE's action in this regard can be found in the comments of Assistant Provost Mathys Meyer as described in paragraph #28 above.

38. UPIKE failed to grant Appleby a reasonable accommodation to provide her with mold-free student housing, as described in paragraphs #25-28 and #35 above.

39. Meyer, (as well as the housing and admissions officers described in paragraph #27 above), were employees, agents, and/or ostensible agents of UPIKE during the time-period of the allegations set forth herein. Further, Meyer and the housing and admission officers described in paragraph #27 were acting within the normal course and scope of their duties in furtherance of the business interests of UPIKE when they made the decision to deny Appleby's request for a reasonable accommodation and to disenroll her from the freshman class. UPIKE is vicariously liable under the legal doctrine of *respondeat superior* for the tortious conduct, acts, and omissions of all individuals named in the preceding sentence, as well as all other employees, agents, or ostensible agents who were responsible for the decision to disenroll Appleby from the freshman class, revoke her offer of admission to the University, and deny her request for a reasonable accommodation.

40. Because of the discrimination suffered by Appleby due to her disability and/or perceived disability, she incurred losses and damages, including

mental anguish, embarrassment, and humiliation in an amount exceeding $75,000.00.

## V. PRAYER FOR RELIEF

WHEREFORE, the Plaintiff demands the following:

1. A trial by jury on all issues so triable in accordance with Federal Rule of Civil Procedure 38;

2. Judgment in favor of the Plaintiff against the Defendant on her RA claims including damages for mental anguish, embarrassment, humiliation, pain and suffering, and all other compensatory damages and relief available under federal law, including a reasonable fee for her attorneys;

3. Pre- and post-judgment interest as allowed by federal law;

4. Any and all other relief to which the Plaintiff may otherwise be properly entitled under the laws and regulations of the United States.

Respectfully submitted,

*/S/Andrew S. Epstein*
ANDREW S. EPSTEIN
VANESSA B. CANTLEY
BAHE, COOK, CANTLEY & NEFZGER
1041 Goss Avenue
Louisville, Kentucky 40217
(502) 587-2002 – Telephone
(502) 587-2007 – Fax
andrew@bccnlaw.com
vanessa@bccnlaw.com
*Counsel for Plaintiff*

13